IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

ANDREW JAMES MCGILL, JR.

:

    v.                    : Civil Action No. DKC 2004-191
                               Criminal No. DKC 99-214

:

UNITED STATES OF AMERICA

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution are (1) Petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (paper 431) and (2) Petitioner's motion to file a supplemental brief (paper 465). In deciding a § 2255 motion, the court need not hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The court has thoroughly reviewed the record in this case, and finds that a hearing is not necessary to address Petitioner's § 2255 motion. For the reasons that follow, the court will grant Petitioner's motion for leave to file a supplemental brief, and deny Petitioner's supplemented motion to vacate, set aside, or correct sentence.

## I.  Background

Petitioner Andrew James McGill, Jr., a former Washington, D.C. Metropolitan Police Department officer, was tried by a jury on three counts: Count One, conspiracy to distribute controlled substances, *see* 21 U.S.C. § 841; Count Two, interstate

transportation of a stolen motor vehicle, *see* 18 U.S.C. § 2312; and Count Three, making false declarations to a grand jury, *see* 18 U.S.C. § 1623.

On May 12, 2000, Petitioner was found guilty on Count One of conspiracy to distribute marijuana.  The jury was not asked to determine drug quantity.  The jury acquitted Petitioner of Count Two and could not reach a verdict on Count Three.

The prosecution of Petitioner arose from assistance he provided to a narcotics trafficking organization headed by Erskine Hartwell.  During trial, the Government presented evidence that Petitioner improperly returned to Hartwell property that had been seized by police, warned co-conspirators of impending police activity, purchased marijuana, attempted to sell marijuana, and participated in motor vehicle theft.

After trial, but before sentencing, the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  On September 28, 2000, at sentencing, Petitioner claimed that under *Apprendi*, the absence of a jury finding on drug quantity limited the maximum sentence to five years, pursuant to 21 U.S.C. § 841(b)(1)(D).  This court rejected that claim, ruling that the statutory maximum for Petitioner's conspiracy conviction was 20 years, under 21 U.S.C. § 841(b)(1)(C), and sentenced Petitioner to 188 months imprisonment, three years supervised release, and a $100 special assessment.

On direct appeal, the United States Court of Appeals for the Fourth Circuit affirmed the conviction and sentence, and declined to exercise its discretion to notice the *Apprendi* error, concluding that it did not affect the fairness, integrity or public reputation of the judicial proceedings:

> [A]pplying the same rationale as that applied by the Supreme Court in [*United States v. Cotton*, 535 U.S. 625 (2002)], the error in McGill's sentence, while plain, did not affect the fairness, integrity, or public reputation of judicial proceedings, given the overwhelming and essentially uncontroverted evidence that the drug conspiracy of which McGill was convicted involved well over the fifty kilograms of marijuana on which his sentence was enhanced. *See Cotton*, 535 U.S. at ---- - ----, 122 S.Ct. at 1785-86. Nor do we find clear error in the district court's finding that 1000 kilograms of marijuana were attributable and foreseeable to McGill considering his role in the conspiracy.
>
> The evidence at the trial of this matter demonstrated the extraordinary scope and pace of drug sales involved in this conspiracy.[] The district court carefully reviewed the various evidentiary bases available to it concerning drug quantity. It relied upon the testimony of Erskine Hartwell, trial testimony from other sellers regarding the amount of marijuana sold, testimony of the surveillance officers, testimony about McGill's own purchases and attempted purchases of marijuana, and the videotape of the numerous drug transactions that occurred, to conclude, based upon a conservative version of the evidence and assuming only five pounds of marijuana were trafficked a day, that substantially more than fifty kilograms of marijuana were involved in this ten-year conspiracy and over 1000 kilograms were attributable to McGill. Based upon the plethora of trial evidence that could have

> supported a drug quantity many times greater
> than that needed to invoke the enhanced
> sentencing range, we find that the evidence
> supporting the district court's findings as to
> the quantity of marijuana involved in this
> vast drug conspiracy is overwhelming and
> essentially uncontroverted.   In addition, we
> find the district court's factual
> determination that 1000 kilograms of marijuana
> was foreseeable and attributable to McGill,
> based upon the duration of his membership in
> the conspiracy, to be sufficiently detailed
> and fully supported by trial evidence.

*United States v. McGill*, 50 F.App'x. 602, 604-05 (4th Cir. 2002)

(footnote omitted) (unpublished disposition).   The Supreme Court

denied *certiorari* in April 2003.   *See McGill v. United States*, No.

02-9443, 538 U.S. 971 (2003).   William C. Brennan, Jr. represented

Petitioner throughout trial.

## II. Issues

Petitioner now brings this § 2255 motion, asserting that his

attorney provided ineffective assistance for the following reasons:

(1) counsel refused to allow Petitioner to testify on his own

behalf; (2)counsel failed to argue for a new trial; (3) counsel

failed to raise the issue of venue; (4) counsel failed to argue

that Petitioner was involved only in a buyer/seller relationship;

(5) counsel failed to request a special verdict form as to the

quantity of drugs; and (6) counsel failed to advise Petitioner to

take a guilty plea.   (Paper 431).   Petitioner also claims, in his

supplemental brief, that his sentence was imposed in violation of

his Sixth Amendment rights to the extent that the federal

4

Sentencing Guidelines were computed based upon facts that were not established by the jury's verdict.   (Paper 465).

## III. Standard of Review

Title 28 U.S.C. § 2255 requires a petitioner asserting constitutional error to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law."  On the other hand, "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a nonconstitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" *United States v. Mikalajunas*, 186 F.3d 490, 495-96 (4th Cir. 1999) (internal citation omitted).  While a *pro se* movant is entitled to have his arguments reviewed with appropriate consideration, *see Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978), if the § 2255 motion, along with the files and records of the case, conclusively shows that he is entitled to no relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255. Furthermore, only issues that have not been waived may be raised:

> In order to collaterally attack a conviction
> or sentence based upon errors that could have

> been but were not pursued on direct appeal,
> the movant must show cause and actual
> prejudice resulting from the errors of which
> he complains or he must demonstrate that a
> miscarriage of justice would result from the
> refusal of the court to entertain the
> collateral attack.  The existence of cause for
> a procedural default must turn on something
> external to the defense, such as the novelty
> of the claim or a denial of effective
> assistance of counsel.  And, in order to
> demonstrate that a miscarriage of justice
> would result from the refusal of the court to
> entertain the collateral attack, a movant must
> show actual innocence by clear and convincing
> evidence. [ ] *Mikalajunas*, 186 F.3d at 492-93
> (citations omitted).  To establish cause for
> procedural default based upon ineffective
> assistance of counsel, petitioners "must show
> that their attorneys' performance fell below
> an objective standard of reasonableness and
> that they suffered prejudice as a result."
> *Id*. (citing *Murray v. Carrier*, 477 U.S. 478,
> 488, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986);
> *Strickland v. Washington*, 466 U.S. 668, 687,
> 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

*Leano v. United States*, 334 F.Supp.2d 885, 890 (D.S.C. 2004).

## IV. Ineffective Assistance of Counsel

The standards governing constitutionally ineffective assistance of counsel claims are well settled under *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prevail on a claim of ineffective assistance of counsel, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice.  *See Strickland*, 466 U.S. at 687.  To demonstrate actual prejudice, he must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different." *Id.* at 694.  According to *Strickland*, there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and the courts must be highly deferential in scrutinizing counsel's performance.  *See id.* at 688-89; *Bunch v. Thompson*, 949 F.2d 1354 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230 (1992).  Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted even had the attorney been deficient.  *See Strickland*, 466 U.S. at 697.

**A. Refusal to Allow Petitioner to Testify**

Petitioner claims that his defense counsel "adamantly refused to allow" him to testify at trial and did not inform him that the ultimate decision whether to testify belonged to Petitioner. (Paper 431, at 4-6).  Petitioner also claims that counsel threatened to quit if Petitioner testified.

In a sworn affidavit, counsel stated that he "strongly advised Mr. McGill not to testify because [he] did not believe that his testimony would be advantageous to his defense.  Mr. McGill had testified before the United States Grand Jury and his testimony was not believed - he was indicted for false statement.  Had Mr. McGill testified at trial, he would have had too much explaining to do, particularly on cross-examination." (Paper 470, Brennan Aff., at 1).  Counsel also stated that he did not remember specifically threatening to quit in this case, but his "practice would have been

to advise a client that [he] would not tolerate perjury and that [he] would attempt to resign from any case in which a client attempted to offer false testimony . . . since Mr. McGill was charged with making a false statement under oath to the grand jury, [he] would have been extra sensitive to any questionable testimony. . . ." (*Id.* at 1-2).  The Government argues that even if counsel's performance was deficient, Petitioner cannot establish prejudice under the *Strickland* standard.

A criminal defendant has a constitutional right to testify on his own behalf at trial.  *See Rock v. Arkansas*, 483 U.S. 44 (1987).  Although the right to testify is not explicitly set forth in the Constitution, its origins lie in the Due Process Clause of the Fourteenth Amendment, the Compulsory Process Clause of the Sixth Amendment, and as a "necessary corollary to the Fifth Amendment's guarantee against compelled testimony."  *Id.* at 52.  "Not-withstanding its constitutional stature, however, the defendant's right to testify is 'not unlimited.'  In particular, 'the right to testify clearly does not include the right to commit perjury.'"  *United States v. Midgett*, 342 F.3d 321, 325 (4th Cir. 2003) (quoting *United States v. Teague*, 953 F.2d 1525, 1530 (11th Cir. 1992) (en banc)).  This limitation was explicitly recognized in *Nix v. Whiteside*, 475 U.S. 157 (1986).

The court need not decide whether counsel's performance with respect to allowing Petitioner to testify in his own defense was

deficient under *Strickland*'s performance prong because, even assuming it was, Petitioner cannot establish prejudice under *Strickland*. In this context, Petitioner's claim requires there to be a reasonable probability that if Petitioner had testified, the jury would not have convicted him of Count One. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004).

Petitioner does not offer concrete evidence of what he would have testified to at trial. In his § 2255 motion he argues, simply:

> At Petitioner's trial it was necessary that he be heard from by the jury because credibility was a paramount issue. While there was overwhelming evidence that a conspiracy to traffick [sic] in drugs existed in the Erskine Hartwell organization, there was a little evidence to link Petitioner to the conspiracy. The overwhelming majority of the evidence that came in against this Petitioner seemed to point to the fact that Petitioner was a corrupt cop who helped a bunch of neighborhood drug dealers evade police and sometimes avoid seizures and arrests. There also was evidence tending to suggest Petitioner being interested in buying or selling marijuana. The government termed it that Petitioner was part of a larger conspiracy.

> If Petitioner had testified, he would have set the record straight that while he may have inquired about buying or selling marijuana, it was only what it was, buying/selling relationship between different individuals who happened to belong in one larger conspiracy. Such testimony, which is not unbelievable based on all the evidence, would have forced the jury to acquit Petitioner of the conspiracy to traffick [sic] in marijuana, and perhaps instead convict him of a lesser included offense of marijuana trafficking (if

such instruction was requested by the government.)

(Paper 431, at 5). Petitioner says only that he "would have set the record straight" but omits any details as to exactly what he would have said. Petitioner admits that there was evidence that he helped "neighborhood drugs dealers evade police and sometimes avoid seizures and arrests[,]" *i.e.,* evidence that he was engaged in more than a buying/selling relationship between different individuals who happened to belong to a larger conspiracy. He does not explain how his testimony would have rebutted this evidence. Petitioner merely states that his testimony would have "forced the jury to acquit" him. Without concrete evidence of what he would have said and how that testimony would have specifically countered the proffered evidence at trial, Petitioner's "conclusory allegations are insufficient to establish the requisite prejudice under *Strickland*." *Terry*, 366 F.3d at 316 & n.*. In sum, even if counsel's performance with respect to Petitioner's request to testify was constitutionally deficient, Petitioner has not shown that this deficiency had a prejudicial effect on the outcome of his trial.

## B. Failure to Make Buyer-Seller Relationship Argument

Somewhat related to Petitioner's claim that his counsel was ineffective for not allowing him to testify in his own defense is his claim that counsel provided ineffective assistance because he failed to raise a buyer-seller defense. Petitioner claims that

10

counsel should have argued that the Government's evidence as to Petitioner's "alleged involvement in marijuana was merely indicative of a buyer-seller relationship with some of the members of the Hartwell organization, and as such could not have been seen as a conspiratorial relationship by the jury. . . ." (Paper 431, at 12).  Petitioner relies on *United States v. Giunta*, 925 F.2d 758 (4th Cir. 1991), and cases from other circuits, for the proposition that a "mere buyer-seller relationship can never form the basis for a conspiracy conviction."  (Paper 431, at 12).

First, Petitioner misinterprets the holding in *Giunta*.  The Fourth Circuit held that one does not come within the 21 U.S.C. § 846 conspiracy prohibition of conspiring to possess with intent to distribute controlled substances by merely facilitating a sale. *Giunta*, 925 F.2d at 765.  The facts in this case do not implicate the seller-facilitator relationship, therefore, *Giunta* is inapposite.  The holding does not stand for the proposition "that a mere buyer and seller relationship can never form the basis for a conspiracy conviction" as Petitioner posits. (Paper 431, at 12). Secondly, the technicalities of the *Giunta* holding need not be explored further because it was expressly overruled by an en banc court in *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc), *cert. denied*, 519 U.S. 1151 (1997).

Nonetheless, the Fourth Circuit has recognized that a buyer-seller defense may exist, in limited circumstances:

[*United States v. Townsend*, 924 F.2d 1385, 1394 (7th Cir. 1991)], unlike *Giunta*, contemplates a situation where the evidence shows one is merely a buyer or seller in a drug transaction and takes the view that such evidence, standing by itself, is insufficient to make out a conspiracy.[1] We take it for granted that there may be instances where one is merely a buyer or seller, but not a conspirator. However, the facts of this case demonstrate [the defendant] was far more than a mere buyer.

---

[1] *Townsend* seems to go a step further by adding that, "The buy-sell transaction is simply not probative of an agreement to join together to accomplish a criminal objective beyond that already being accomplished by the transaction." *Townsend*, 924 F.2d at 1394. Furthermore, *Townsend* seems to take the view that "The mere purchase or sale of drugs (even in large quantities) does not demonstrate an agreement to join a drug distribution conspiracy." *Id.* We decline to go this far. In our view, evidence of a buy-sell transaction is at least relevant (*i.e.* probative) on the issue of whether a conspiratorial relationship exists. Moreover, we believe evidence of a buy-sell transaction, when coupled with a substantial quantity of drugs, would support a reasonable inference that the parties were coconspirators.

*United States v. Mills*, 995 F.2d 480, 484-85 (4th Cir.), *cert. denied*, 510 U.S. 904 (1993). In no case does the Fourth Circuit hold that evidence of a buyer-seller relationship can never form the basis for a conspiracy conviction. In fact, the court expressly states that such evidence is probative of participation in a conspiracy.

As in *Mills*, there was ample evidence in this case that Petitioner "was far more than a mere buyer," including giving

seized property to Hartwell and warning co-conspirators of impending police activity. Counsel was not deficient for failing to argue that Petitioner was engaged only in a buyer-seller relationship. In light of the ample evidence indicating that he was engaged in more than a mere buyer-seller relationship, Petitioner has not demonstrated any reasonable probability that the result of the proceeding would have been different had counsel argued this defense.

### C.  *Apprendi* Related Claims

#### 1.  Failure to Argue for a New Trial

Petitioner claims that counsel was ineffective because he withdrew a meritorious claim for a new trial based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which was decided after Petitioner's conviction but before his sentencing. Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Petitioner maintains that, had the jury been asked to determine the quantity of drugs involved, Petitioner's sentencing exposure would have been capped by the five year statutory maximum under 21 U.S.C. § 841(b)(1)(D).

This issue has already been fully litigated on direct appeal to the Fourth Circuit. It is well-settled law that an issue that has been determined on direct appeal may not be relitigated in a §

2255 motion.  *Proctor v. United States*, 729 F.Supp. 473, 474-75
(D.Md. 1990), *aff'd, Epps v. United States*, 911 F.2d 721 (4th Cir.
1990).  On direct appeal, the Fourth Circuit held that there was
"overwhelming and essentially uncontroverted evidence that the drug
conspiracy of which McGill was convicted involved well over the
fifty kilograms of marijuana on which his sentence was enhanced."
*McGill*, 50 F.App'x. at 605.

        To the extent that Petitioner is recasting his *Apprendi* claim
as an ineffective assistance of counsel claim, it again fails
because he is unable to show either error or actual prejudice under
the *Strickland* standard.  *See* 466 U.S. at 687.  The motion for a
new trial was withdrawn as a tactical decision – counsel decided to
press directly with the hope of limiting sentencing exposure,
rather than pursue an alternative argument that would only result
in a new trial at which the jury would undoubtedly have found
sufficient quantity.  Petitioner must show that there is a
reasonable probability that but for counsel's failure to move for
a new trial, the result of the proceeding would have been
different.  If counsel had successfully moved for a new trial, it
is likely that the Government simply would have presented the same
witnesses and requested a jury determination on drug quantity,
correcting the *Apprendi* error.  In light of the "overwhelming and
essentially uncontroverted evidence" that the conspiracy involved
well over the specific threshold drug quantity on which his

sentence was enhanced, Petitioner likely would have been exposed to the same sentencing range.   Thus, Petitioner cannot show either error or actual prejudice resulting from counsel's failure to move for a new trial.

### 2. Failure to Request Special Verdict Form on Quantity

Petitioner also claims counsel was ineffective for failing to pose a quantity question on the special verdict sheet.  At the time of Petitioner's conviction, May 2000, the practice was for the court, not the jury, to determine drug quantity.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Strickland*, 466 U.S. at 688. Counsel stated, "I did not request a special verdict on quantity of controlled dangerous substance.  At the time the case was submitted to the jury (May 11, 2000) the law was that the Court would determine the drug quantity for sentencing purposes.  *Apprendi v. New Jersey* . . . had not been decided. . . ." (Paper 470, Ex. 1, Brennan Aff., at 3-4) (emphasis in original).   The prevailing professional norms did not require counsel to submit a drug quantity question on the special verdict form.

For purposes of the *Strickland* prejudice analysis, the "result of the proceeding" in this context is the length of the sentence Petitioner received.  As explained above, Petitioner is unable to show prejudice given the "overwhelming and uncontroverted evidence" that the conspiracy involved well over the specific threshold drug

quantity on which his sentence was enhanced.  Petitioner has not shown that there is a reasonable probability that, had counsel requested that quantity be specified on the special verdict form, he would have received a shorter sentence.

### D.  Failure to Raise Issue of Venue

Petitioner argues that counsel was ineffective because he failed to raise the issue of venue in a clear manner and at the proper time.  Petitioner specifically claims that venue as to Count One was improper because all the facts alleged in Count One took place in Washington, D.C. and not in Maryland, where he was tried.

Petitioner was charged with conspiracy to distribute controlled substances, interstate transportation of a stolen motor vehicle, and making false declarations to a grand jury.

> When defendants are charged with multiple counts, venue must lie as to each individual count.  *See United States v. Robinson*, 275 F.3d 371, 378 (4th Cir. 2001). . . . In a conspiracy case, "a prosecution may be brought in any district in which any act in furtherance of the conspiracy was committed," and "proof of acts by one co-conspirator can be attributed to all members of the conspiracy." *United States v. Al-Talib*, 55 F.3d 923, 928 (4th Cir. 1995); *see also* 18 U.S.C. § 3237(a); [*United States v.*] *Bowens*, 224 F.3d [302,] 311 n. 4 [(4th Cir. 2000)]. Acts in furtherance of a criminal conspiracy include exploits large and small, dealings that represent turning points in the conspiracy and those that merely enable it to continue its operations. *See, e.g., Al-Talib*, 55 F.3d at 928 (acts in furtherance of conspiracy include arrival by plane in district and travel by car through district).

*United States v. Smith*, 452 F.3d 323, 334-35 (4th Cir. 2006).  The indictment properly alleged that Counts One and Two occurred in the "District of Maryland and elsewhere" and that Count Three occurred in the District of Maryland.  Thus, the charges could not be dismissed pretrial for lack of venue.  "The rule that the objection must be made before trial applies only when the defect is apparent on the face of the indictment. *See* 2 [Charles Alan] Wright, *Federal Practice & Procedure* § 306, at 221-22 ([ed.] 1982).  Otherwise, the objection can be made at the close of all the evidence." *United States v. Melia*, 741 F.2d 70, 71 (4th Cir. 1984).  Counsel acted properly in raising the issue of venue at the end of trial.

The record shows that counsel requested, and the court gave, jury instructions requiring a finding that the charged offenses had taken place at least partly in Maryland.  (Tr. of Jury Instructions Hearing, May 11, 2000, at 3-7; paper 312, Jury Instructions, at 16-17).  "Submitting the venue question to the jury is an appropriate procedure for resolving a factual dispute relating to venue." *United States v. Ebersole*, 411 F.3d 517, 526 n.10 (4th Cir. 2005).  Additionally, counsel highlighted venue as an issue multiple times during closing arguments.[1]  Petitioner has not shown that counsel performed below an objective standard of reasonableness with regard to raising the issue of venue.

---

[1] *See* Trial Tr., May 11, 2000, at 93-96, 100, 102, 105, 114 & 118-19.

**E.  Failure to Advise Petitioner to Take Guilty Plea**

Petitioner states that counsel provided ineffective assistance because he failed to advise Petitioner to take a guilty plea and told Petitioner that the most exposure he risked was a five year sentence,[2] when in fact Petitioner was sentenced to 188 months of incarceration and three years of supervised release.  Petitioner maintains that had counsel given him a more accurate sentencing calculation, he would have taken a guilty plea.[3]

The Government argues that counsel did not provide ineffective assistance because no plea agreement was ever offered to Petitioner, Petitioner had not given counsel authority to approach the Government to seek a plea agreement, and Petitioner's declaration that he was told the most exposure he risked was five years is "plainly incredible."

When examining an ineffective assistance claim arising out of the plea process, the slightly modified issue under the prejudice prong of *Strickland* is "whether counsel's constitutionally

---

[2] Counsel states that any discussion of a five year maximum could only have occurred post verdict, and once *Apprendi* was decided.

[3] It is customary for a defendant to be informed of the maximum penalty he faces during his initial appearance before the court and again at his arraignment.  If Petitioner learned of the maximum penalty he faced during his appearances before the court, that would correct any prejudice he may have suffered from his counsel's alleged bad advice.  Those recordings are not currently available and thus the determination on this issue will be made without the benefit of that information.

ineffective performance affected the outcome of the plea process."
*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  That is, Petitioner must
show that there is "a reasonable probability that, but for
counsel's errors," he would have pled guilty and received a lesser
sentence.  *Id.*

Petitioner is unable to meet this burden because there is no
evidence on the record that a plea agreement was ever offered by
the Government to Petitioner.  Counsel's performance was not
deficient for failing to communicate a plea offer which did not
exist.  Petitioner's allegation that counsel provided gross
misadvice about his sentencing exposure is likewise insufficient to
show actual prejudice.  The prejudice inquiry focuses on "whether
counsel's constitutionally ineffective performance affected the
outcome of the plea process." *Hill*, 474 U.S. at 59.  Even if it is
true that counsel told Petitioner he was facing at most five years,
when in fact he was facing up to life imprisonment if convicted on
all three counts, that does not change the fact that the Government
never offered a plea agreement to Petitioner.  Thus, Petitioner did
not rely on counsel's alleged misadvice in rejecting a plea
agreement that would have resulted in a shorter sentence.

Counsel also testified that Petitioner never authorized him to
pursue plea negotiations.  Petitioner's response that "he didn't
have to authorize his counsel to give him legal advice that he did
not know existed (being a layman)[,]" (paper 483, at 6), is absurd.

Petitioner had been a police officer for nearly ten years by the time he was indicted, he was surely aware of the possibility of entering into plea negotiations.

The Fourth Circuit's decision in *Fields v. Attorney General of the State of Md.*, 956 F.2d 1290, 1297 (4th Cir.), *cert. denied*, 506 U.S. 885 (1992), is instructive in addressing this issue. In *Fields*, the petitioner claimed that if counsel had properly advised him regarding acceptance of a plea offer, he would have pled to a different plea bargain and received a lighter sentence. In refusing to find that there was a reasonable probability that the outcome would have been different but for counsel's action, the court noted that the record did not establish, and the petitioner had not offered, anything more than a "post hoc 'bald assertion' . . . that [he] would have consummated the earlier plea agreements even if [counsel's performance had been effective]. . . to prove that he would have accepted the arraignment plea offers." *Id.* at 1298. Similarly, in this case Petitioner has not offered, nor does the record provide, anything more than his mere assertion that he would have pled guilty and received a lighter sentence if counsel had effectively advised him. Without more, Petitioner fails to establish that there is a reasonable probability that he was prejudiced by counsel's advice regarding pleas.

## V.  *Blakely/Booker* Claim

Petitioner moved for leave to file a supplemental brief, asserting a claim under *Blakely v. Washington*, 542 U.S. 296 (2004).[4]  The court will grant Petitioner's motion for leave to file, but deny his arguments on the merits.[5]

> [T]he Supreme Court issued its decisions in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (holding that the State of Washington's mandatory sentencing guidelines contravened the Sixth Amendment), and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (applying *Blakely* principles to the federal Sentencing Guidelines).  Under *Booker*, there are two types of error.  First, Sixth Amendment error occurs when a sentencing court enhances a defendant's sentence beyond the maximum authorized by facts found by a jury beyond a reasonable doubt or admitted by the defendant. *See Booker*, 543 U.S. at 245, 125 S.Ct. 738; *United States v. White*, 405 F.3d 208, 215 (4th Cir. 2005).  Second, statutory error occurs when a sentencing court treats the Guidelines as mandatory, rather than as advisory.  *See Booker*, 543 U.S. at 245-46, 125 S.Ct. 738; *White*, 405 F.3d at 215.

---

[4] Although Petitioner does not cite to *United States v. Booker*, 543 U.S. 220 (2005), which extended *Blakely* to the federal sentencing guidelines, the court will assume that he also relies on *Booker*.

[5] The motion to supplement, filed July 9, 2004, likely asserts an untimely claim.  There is a one year statute of limitations for filing a § 2255 petition, which, in this case, began to run from the denial of the petition for writ of *certiorari* by the Supreme Court in April 2003.  Thus, unless the proposed amendment relates back to the initial filing, it is barred.  *See Mayle v. Felix*, 125 S.Ct. 2562 (2005) and *United States v. Pittman*, 209 F.3d 314 (4th Cir. 2000). Because the claim is unsuccessful on its merits, the court will not determine the timeliness issue.

*United States v. Sullivan*, 455 F.3d 248, 265 (4th Cir. 2006). Petitioner argues that the first type of error occurred here, that his sentence was computed based on facts not established by a jury verdict.

"When a decision of [the Supreme] Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review. As to convictions that are already final, however, the rule applies only in limited circumstances." *Schriro v. Summerlin*, 542 U.S. 348 (2004) (citation omitted). Generally, a new procedural rule does not apply retroactively, and a federal habeas petitioner therefore ordinarily cannot rely on such a new rule on collateral review if it was handed down after the conviction and sentence became final on direct review. *Id.* at 2523.

The court must first determine whether Petitioner's conviction became final prior to the 2005 decision in *Booker*. The Fourth Circuit affirmed Petitioner's conviction in November 2002, and the Supreme Court denied *certiorari* in April 2003, *see McGill,* 538 U.S. 971. "[A] judgment of conviction is final . . . when the United States Supreme Court denies a petition for writ of *certiorari* after a direct appeal[.]" *United States v. Segers*, 271 F.3d 181, 185 (4th Cir. 2001). Thus, Petitioner's conviction became final well before *Booker* (or *Blakely*) was decided.

22

The Fourth Circuit has held that the *Booker/Blakely* doctrine is not retroactive:

> The rule announced in *Booker* is a new rule of criminal procedure, but it is not a watershed rule. Accordingly, the rule is not available for post-conviction relief for federal prisoners, like [Petitioner], whose convictions became final before *Booker* (or *Blakely*) was decided.

*United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005). Thus, Petitioner is not entitled to relief under *Booker/Blakely*.

## VI.  Conclusion

For the foregoing reasons, the court will deny Petitioner's supplemented § 2255 motion to vacate. A separate Order will follow.

 

 

 

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

February 23, 2007